IN THE UNITED STATES DISTRICT COURT

DISTRICT OF UTAH

| | |
|---|---|
| JOHNNY DRAWN,<br><br>　　　　Plaintiff,<br><br>v.<br><br>UTAH DEPARTMENT OF TRANSPORTATION,<br><br>　　　　Defendant. | **MEMORANDUM DECISION AND ORDER GRANTING DEFENDANT'S MOTION TO DISMISS**<br><br>Case No. 2:22-cv-00245 JNP<br><br>Judge Jill N. Parrish |

　　　　This is an employment discrimination action. Plaintiff Johnny Drawn worked for defendant Utah Department of Transportation. Plaintiff alleges that his supervisor and co-workers subjected him to racial discrimination. Plaintiff sued defendant, asserting claims for harassment, discrimination, failure to promote and retaliation under Title VII of the Civil Rights Act of 1964.

　　　　Before the court is defendant's motion to dismiss (ECF No 31). For the reasons stated below, defendant's motion is granted.

## BACKGROUND

　　　　Plaintiff is an African American male. On November 9, 2015, plaintiff began working for defendant. On January 23, 2017, plaintiff notified defendant's Human Resources department that plaintiff's supervisor and co-workers had made offensive and derogatory remarks towards him. Defendant immediately investigated plaintiff's claims, found discrimination had occurred, and disciplined the supervisor.

1

A year later, on March 1, 2018, plaintiff alleged that his same supervisor failed to assign plaintiff to the 2018 construction detail, although several others were similarly not assigned. Plaintiff alleges that every day he did not work in construction qualifies as a new act of discrimination. On November 5, 2018, Plaintiff complained to defendant that two more co-workers had used racial slurs in the workplace. On January 3, 2019, plaintiff filed a Charge of Discrimination with the EEOC.

In February 2019, upon plaintiff's request, defendant transferred plaintiff to a new working location. Plaintiff desired to be promoted to a Level II employee, which affords an increase in wages. To qualify, defendant's policy requires applicants to achieve a "successful peer review," including passing a written test. While plaintiff attempted to qualify for Level II employment, defendant hired a white employee directly into a Level II position. However, on the very day plaintiff passed his Level II test on May 22, 2019, he was promoted to Level II and received a 6% pay raise. Plaintiff alleges he is entitled to a 12% pay raise.

Months after filing his Charge of Discrimination, defendant discovered that plaintiff had allegedly been dumping dirty fill in an unapproved area and profiting from his job. Plaintiff disputes these allegations but resigned his position nonetheless. Plaintiff now argues that defendant fired him in retaliation for plaintiff's filing of a Charge of Discrimination. Plaintiff filed the present lawsuit in federal district court.

## STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss a claim when the plaintiff fails to state a claim upon which relief can be granted. The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties may present at trial but to "assess whether the plaintiff's complaint alone is legally sufficient to state a

2

claim for which relief may be granted." *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003) (quoting *Miller v. Glanz*, 948 F.2d 1562, 1565 (10th Cir. 1991).

"A court reviewing the sufficiency of a complaint presumes all of plaintiff's factual allegations are true and construes them in the light most favorable to the plaintiff." *Hall v. Bellmon*, 935 F.2d 1106, 1108 (10th Cir. 1991). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). Plausibility, in the context of a motion to dismiss, means that the plaintiff has alleged facts that allow "the court to draw [a] reasonable inference that the defendant is liable for the misconduct alleged." *Id*.

## DISCUSSION

Defendant argues that plaintiff's Amended Complaint should be dismissed due to (1) plaintiff's failure to file a timely administrative claim regarding pre-Charge of Discrimination acts, (2) failure to exhaust administrative remedies for post-Charge of Discrimination acts, and (3) plaintiffs' failure to sufficiently plead a prima facie case on all remaining claims. The court will address each argument in turn.

### *Pre-Charge Acts*

Title VII makes it unlawful to "discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Plaintiff alleges that he was discriminated against by his supervisor and various co-workers based on his race.

Before filing suit under Title VII, a plaintiff must file a charge with the EEOC either 180 or 300 days "after the alleged unlawful employment practice occurred." 42 USC. § 2000e-5(e)(1). As Utah is a deferral state, the parties agree that Plaintiff was subject to the 300-day timeframe for filing his charge.

Defendant seeks a ruling that all of plaintiff's claims concerning alleged discrimination prior to March 10, 2018 – the 300-day mark – are untimely filed and should be dismissed. Plaintiff responds that because the unlawful employment conduct he suffered created a hostile work environment, rather than discrete actionable harms, he may seek recovery for all of defendant's course of conduct so long as at least one constituent component thereof occurred within 300 days of his EEOC filing.

In *National Railroad Passenger Corp. v. Morgan*, the Supreme Court held that Title VII "precludes recovery for discrete acts of discrimination or retaliation that occur outside the statutory time period." 536 U.S. 101, 105 (2002). Nevertheless, the Supreme Court in *Morgan* also made clear that if a Title VII plaintiff can establish an actionable hostile work environment claim, "the entire period of the hostile environment may be considered by a court for the purposes of determining liability" if at least some portion of the conduct occurred within 300 days of filing the charge. *See id*. at 117. Thus, the critical question for purposes of this motion is whether plaintiff has adequately alleged the existence of a hostile work environment or whether he has alleged a number of discrete, individually actionable, adverse actions. If it is the latter, plaintiff is precluded from recovery for any alleged discrimination that occurred before March 10, 2018.

"Discrete acts such as termination, failure to promote, denial of transfer, or refusal to hire are easy to identify." *Id*. at 114. "Hostile environment claims are different in kind" in that

"[t]heir very nature involves repeated conduct." *Id*. at 115. A hostile work environment will be found when repeated conduct is "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment[.]" *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (citation omitted).

"In determining whether an actionable hostile work environment claim exists, we look to 'all the circumstances,' including 'the frequency of the . . . conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Morgan*, 536 at 116 (quoting *Harris*, 510 at 23). The Tenth Circuit has provided two additional considerations to guide the analysis of when a series of acts will qualify as a single actionable hostile work environment practice. *See Hansen*, *See Hansen v. SkyWest Airlines*, 844 F.3d 914, 923 (10th Cir. 2016). First, whether the acts are "related by type, frequency, and perpetrator." *Id*. (quoting *Duncan v. Manager, Dep't of Safety, City & Cty. of Denver*, 397 F.3d 1300, 1309 (10th Cir. 2005)). And second, "whether the acts occurred when the employee 'was working in the same place.'" *Id*. (quoting *Tademy v. Union Pac. Corp.*, 614 F.3d 1132, 1144 (10th Cir. 2008)).

In support of his hostile work environment claim, plaintiff points to the derogatory comments of his supervisor and several employees, as well as his supervisor's failure to place him on construction work detail. Plaintiff makes this claim despite the fact that by plaintiff's own admission, less than half of all employees were placed on construction duty every year. This is the extent of plaintiff's allegations of pre-Charge discrimination.

Although the hostile work environment analysis is a flexible one, these discrete acts cannot combine to create a valid claim for hostile work environment. The conduct alleged does not rise to the level of pervasive. *See Duncan*, 397 F.3d at 1309. Even granting all reasonable

5

inferences in his favor, plaintiff has not alleged facts that plausibly suggest he experienced conduct "sufficiently severe or pervasive to alter the conditions of [his] employment and create an abusive working environment[.]" *Harris v. Forklift Sys. Inc.*, 510 U.S. 17, 21 (1993) (citation omitted). Instead, the events he alleges are much more like the discrete acts identified by the Supreme Court in *Morgan* as independently actionable. *See Morgan*, 536 U.S. at 114. ("Discrete acts such as termination, failure to promote, denial of transfer, or refusal to hire are easy to identify."). Thus, plaintiff may not recover for any actions occurring before March 10, 2018, the 300-day pre-Charge of Discrimination date.

### *Post-Charge Acts*

Plaintiff alleges defendant did not hire him as a Level II employee and further, forced him to resign in retaliation for having filed a Charge of Discrimination. Title VII also makes it unlawful for an employer to fail to promote a qualified employee or retaliate against an employee "because he has opposed any practice made an unlawful employment practice by this subchapter." 42 U.S.C. § 2000e-3(a). Defendant argues that Plaintiff has not exhausted his administrative remedies as to these alleged adverse actions and therefore, those claims must be dismissed.

In the Tenth Circuit, "federal courts lack jurisdiction over incidents occurring after the filing of an EEOC claim unless the plaintiff files a new EEOC claim or otherwise amends [his] original EEOC claim to add the new incidents." *Eisenhour v. Weber Cty.,* 744 F.3d 1220, 1227 (10th Cir. 2014) (citing 29 C.F.R. § 1601.12(b)); *see also Martinez v. Potter*, 347 F.3d 1208, 1210-11 (10th Cir. 2003) (noting that, in the Tenth Circuit, the rule of *Morgan* applies equally "to discrete claims based on incidents occurring *after* the filing of Plaintiff's EEOC complaint"). It is undisputed that plaintiff neither filed additional charges with the EEOC, nor amended his

6

Charge. Plaintiff argues, however, that he did not need to have amended or filed new charges of discrimination because all post-Charge discriminatory actions stemmed from a hostile work environment previously reported to the EEOC.

Having previously found that plaintiff has failed to sufficiently plead the existence of a hostile work environment, plaintiff's arguments are unpersuasive. Simply put, plaintiff needed to have filed new administrative charges regarding his failure to become a Level II employee with a 12% pay increase and his retaliation claim for being forced to resign. His failure to do so now bars his recovery under Title VII. *See Morgan*, 536 U.S. at 110 ("A party, therefore, must file a charge within either 180 or 300 days of the date of the act or lose the ability to recover for it.").[1]

### *Remaining Allegations Fail to State a Claim*

The only remaining alleged discriminatory acts by defendant involve alleged racial slurs made by two co-workers in November 2018. All other claims are either time-barred or barred because plaintiff has not exhausted his administrative remedies.

Plaintiff admits in his Complaint that the offensive comments made in November 2018 were made by co-workers, not supervisors. Defendant argues that one incident of alleged racial slurs made by two co-workers, who are not in positions of authority, cannot be deemed to have created either a hostile work environment or a company-wide policy of discrimination. This court agrees. While plaintiff's co-workers' derogatory comments are deplorable, the "mere utterance of an epithet which engenders offensive feelings in an employe does not sufficiently affect the conditions of employment to implicate Title VII." *Al-Kazaz v. Unitherm Food Sys. Inc.*, 594 F. App'x 460, 462 (10th Cir. 2014) (internal citation and quotations omitted).

---

[1] Moreover, the court is skeptical that plaintiff was not appropriately promoted as a Level II employee when by plaintiff's own admission, he was promoted the day he passed the qualifying Level II test.

Moreover, when a discrimination perpetrator is determined not to be a supervisor, then the employer is only liable if the employer acted negligently in failing to prevent harassment or did not adequately respond to notice of the harassment. *See Faragalla v. Douglas Cnty. Sch. Dist. RE 1*, 411 F. App'x 140, 154 (10th Cir. 2011); *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 673 (10th Cir. 1998). Plaintiff has not sufficiently alleged facts to indicate that defendant was negligent in addressing those racial slurs in the workplace. Indeed, plaintiff makes no other allegations other than that the two co-workers made a derogatory slur towards plaintiff. Without more, there is nothing to link the employer to negligently preventing harassment. Plaintiff's general assertions of discrimination are simply insufficient to survive a motion to dismiss. While "[s]pecific facts are not necessary, some facts are." *Khalik v. United Air Lines*, 671 F.3d 1188, 1193 (10th Cir. 2012) (citation omitted).

## CONCLUSION

For the reasons articulated, defendant's motion to dismiss (ECF No. 31) is GRANTED.

DATED this 28th day of March, 2024.

_____
Jill N. Parrish
United States District Court Judge